# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CHARLES S.,[1] <br><br> Plaintiff, <br><br> v. <br><br> NANCY A. BERRYHILL, Acting Commissioner of Social Security, <br><br> Defendant. | No. 17 C 7438 <br><br> Magistrate Judge Mary M. Rowland |

## MEMORANDUM OPINION AND ORDER

Plaintiff Charles S. filed this action seeking reversal of the final decision of the Commissioner of Social Security denying his applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act (the Act). The parties consented to the jurisdiction of the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), and filed cross motions for summary judgment. This Court has jurisdiction pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). For the reasons stated below, the case is remanded for further proceedings consistent with this Opinion.

## I. PROCEDURAL HISTORY

On August 15, 2013, Plaintiff applied for DIB and SSI, alleging that he became disabled on September 1, 2011 because of diabetes, asthma, sleep apnea,

---

[1] In accordance with Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

hypertension, and a heart attack. (R. at 108–09, 147, 236). These applications were denied initially (*id.* at 108–09, 143–47), but upon reconsideration, the Social Security Administration (SSA) found that Plaintiff became disabled on May 3, 2014. (*Id.* at 138–39, 153–58). Plaintiff sought a hearing before an Administrative Law Judge (ALJ) to challenge the finding that he was not disabled prior to May 3, 2014. (*Id.* at 46, 161–62). Plaintiff also amended his alleged disability onset date to September 5, 2012. (*Id.* at 46–47, 322). On May 27, 2016, an ALJ held a hearing. (*Id.* at 42–87). Plaintiff, represented by counsel, testified. (*Id.* at 42–45, 54–79). The ALJ heard testimony from a vocational expert (VE) as well. (*Id.* at 75–76, 78–85).

On September 19, 2016, the ALJ issued a partially favorable decision, which found that Plaintiff was not disabled prior to May 3, 2014, but became disabled on that date and has continued to be disabled through the date of his decision. (R. at 17, 35). Applying the five-step sequential evaluation process, the ALJ found, at step one, that Plaintiff had not engaged in substantial gainful activity since his alleged disability onset date. (*Id.* at 23). At step two, the ALJ found that Plaintiff has had the following severe impairments since the alleged disability onset date: congestive heart failure, coronary artery disease, asthma, chronic venous insufficiency with stasis, peripheral vascular disease, peripheral edema, diabetes mellitus, sleep apnea, and obesity. (*Id.* at 24). At step three, the ALJ determined that, since the alleged disability onset date, Plaintiff has not had an impairment or a combination of impairments that meets or medically equals the severity of any of the listings enumerated in the regulations. (*Id.* at 24–25).

The ALJ then assessed Plaintiff's Residual Functional Capacity (RFC)[2] and determined that since the alleged disability onset date, Plaintiff has had the RFC to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except:

> [He can] occasionally lift and/or carry 20 pounds, but frequently lift 10 pounds. He can sit for six hours total, but stand and/or walk for only two hours total in a normal eight-hour workday. He can occasionally balance, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, or scaffolds. The claimant must avoid concentrated exposure to humidity, wetness, dust, odors, fumes, pulmonary irritants, extreme cold, and extreme heat. Finally, he must avoid all exposure to unprotected heights and moving mechanical parts.

(R. at 26). Moving to step four, the ALJ determined that Plaintiff has been unable to perform any past relevant work since his alleged disability onset date. (*Id.* at 33). At step five, the ALJ found that before May 3, 2014, there were unskilled jobs that existed in significant numbers in the national economy that Plaintiff could have performed, such as cashier II, final assembler, and visual inspector. (*Id.* at 33–34). Thus, Plaintiff was not disabled before May 3, 2014. (*Id.* at 34–35). However, the ALJ also found that as of May 3, 2014, Plaintiff became an individual closely approaching advanced age (aged 50–54), see 20 C.F.R. §§ 404.1563(d), 416.963(d), and was unable to transfer job skills to other occupations. (R. at 33). Considering Plaintiff's age, education, work experience, and RFC, and applying Medical-Vocational Guideline 201.14, the ALJ then determined that Plaintiff was disabled from May 3, 2014 through the date of his decision. (*Id.* at 34–35).

---

[2] Before proceeding from step three to step four, the ALJ assesses a claimant's RFC, which "is the maximum that a claimant can still do despite his mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

On August 15, 2017, the Appeals Council denied Plaintiff's request for review. (R. at 1–5). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the Commissioner's final decision. *Villano v. Astrue*, 556 F.3d 558, 561–62 (7th Cir. 2009).

## II. STANDARD OF REVIEW

A court reviewing the Commissioner's final decision may not engage in its own analysis of whether the claimant is severely impaired as defined by the Social Security regulations. *Young v. Barnhart*, 362 F.3d 995, 1001 (7th Cir. 2004). Nor may it "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [its] own judgment for that of the Commissioner." *Id*. The Court's task is "limited to determining whether the ALJ's factual findings are supported by substantial evidence." *Id*. "Evidence is considered substantial if a reasonable person would accept it as adequate to support a conclusion." *Indoranto v. Barnhart*, 374 F.3d 470, 473 (7th Cir. 2004); *see Moore v. Colvin*, 743 F.3d 1118, 1120–21 (7th Cir. 2014) ("We will uphold the ALJ's decision if it is supported by substantial evidence, that is, such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.") (internal quotations omitted). "Substantial evidence must be more than a scintilla but may be less than a preponderance." *Skinner v. Astrue*, 478 F.3d 836, 841 (7th Cir. 2007). "In addition to relying on substantial evidence, the ALJ must also explain his analysis of the evidence with enough detail and clarity to permit meaningful appellate review." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 351 (7th Cir. 2005).

Although this Court accords great deference to the ALJ's determination, it "must do more than merely rubber stamp the ALJ's decision." *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002) (citation, quotations, and alternations omitted). "This deferential standard of review is weighted in favor of upholding the ALJ's decision, but it does not mean that we scour the record for supportive evidence or rack our brains for reasons to uphold the ALJ's decision. Rather, the ALJ must identify the relevant evidence and build a 'logical bridge' between that evidence and the ultimate determination." *Moon v. Colvin,* 763 F.3d 718, 721 (7th Cir. 2014). "[W]here the Commissioner's decision lacks evidentiary support or is so poorly articulated as to prevent meaningful review, the case must be remanded." *Steele v. Barnhart,* 290 F.3d 936, 940 (7th Cir. 2002).

### III. DISCUSSION

Plaintiff challenges the ALJ's decision on various grounds. After reviewing the record and the parties' briefs, the Court finds that remand is necessary because the ALJ: (1) erred in weighing the opinion evidence related to Plaintiff's need to elevate his legs, and (2) erred in assessing Plaintiff's subjective symptom allegations.[3]

#### A. Opinion Evidence Regarding Leg Elevation

Plaintiff asserts that the ALJ improperly evaluated the following opinion evidence regarding Plaintiff's need to elevate his legs: 1) a physician's order and instructions dated February 6, 2014; 2) a nurse's home care instructions from February, March,

---

[3] Because the Court remands on these bases, it does not address Plaintiff's other argument at this time.

5

and October 2014; and 3) an April 2014 report from treating physician, Vijay Patel, M.D.

Social Security regulations require the ALJ to evaluate *every* medical opinion received. 20 C.F.R. § 404.1527(c); *see Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). Generally, an ALJ will "give more weight to the opinion of a source who has examined [the claimant] than to the opinion of a source who has not examined [the claimant]." 20 C.F.R. § 404.1527(c)(1). "An ALJ can reject an examining physician's opinion only for reasons supported by substantial evidence in the record; a contradictory opinion of a non-examining physician does not, by itself, suffice." *Gudgel v. Barnhart*, 345 F.3d 467, 470 (7th Cir. 2003). Unless a treating source's medical opinion is given controlling weight, the ALJ must weigh *all* medical opinions considering the following factors: (1) the nature and duration of the examining relationship; (2) the length and extent of the treatment relationship; (3) the extent to which medical evidence supports the opinion; (4) the degree to which the opinion is consistent with the entire record; (5) the physician's specialization if applicable; and (6) other factors which validate or contradict the opinion. 20 C.F.R. § 404.1527(c)(1)–(6). When evaluating opinions from "other medical sources," such as a nurse practitioner, an ALJ should "apply the same criteria listed in 20 C.F.R. § 404.1527 for evaluating medical opinions from acceptable medical sources." *Shegog v. Berryhill*, No. 16 C 7436, 2018 WL 1898456, at *3 (N.D. Ill. Apr. 20, 2018) (citations omitted); *see also Cummings v. Colvin*, No. 14 CV 10180, 2016 WL 4483854, at *3 (N.D. Ill. Aug. 24, 2016) ("An ALJ should weight the opinions of these "other medical sources"

6

by considering the same set of regulatory factors that they would for any other source."). After considering the regulatory factors, the ALJ must then provide a "sound explanation" for the weight given each opinion. *Punzio v. Astrue,* 630 F.3d 704, 710 (7th Cir. 2011). There are several flaws in the ALJ's analysis, warranting remand on this issue.

First, the ALJ committed reversible error by completely failing to evaluate or weigh the February 2014 physician order regarding leg elevation. On February 6, 2014, an examining doctor[4] signed a "Physician Order" indicating that Plaintiff should elevate his legs to heart level or above for 30 minutes, four times a day. (R. at 527). Although the ALJ was not required to "discuss every piece of evidence in the record," he was not permitted to "ignore an entire line of evidence that is contrary" to his disability determination. *Golembiewski v. Barnhart,* 322 F.3d 912, 917 (7th Cir. 2003). And the February 2014 order qualifies as a contrary line of evidence; per the VE's testimony, an individual who must elevate his legs to chest level for 30 minutes four times during the day—as instructed by the February 2014 order—could not work in the national economy. (R. at 82, 527). In overlooking the February 2014 order, the ALJ ignored highly relevant evidence that contradicts his non-disability finding, which is an error that requires remand. *Gonzalez v. Colvin,* No. 12 CV 10262, 2014 WL 4627833, at *4 (N.D. Ill. Sept. 16, 2014); *Echols v. Colvin,* No. 12 C 9797, 2013

---

[4] The signature on this physician's order is illegible. Plaintiff suggests that Ken Richards, M.D. gave these orders, but the Court believes they were signed by Evan Samett, M.D. Dr. Samett examined Plaintiff on the same day that the orders were signed (February 6, 2014), and his operative report for that day identifies the same encounter information number as noted on the order. (R. at 527, 589). In any event, the Commissioner does not dispute that the orders were signed by an examining doctor. (Def.'s Mem., Dkt. 21 at 4–7).

7

WL 5594724, at *1 (N.D. Ill. Oct. 10, 2013). *See Golembiewski*, 322 F.3d at 917 (noting that when an ALJ ignores an entire line of contrary evidence, "it is impossible for a reviewing court to tell whether the ALJ's decision rests upon substantial evidence").

Second, the ALJ also erred in evaluating a nurse's "Home Care Instructions" from February, March, and October 2014, each indicating that Plaintiff should elevate his legs above his heart when sitting, for at least 30 minutes, four times a day. (*See* R. at 526, 528–29, 765–66, 801–03). The ALJ acknowledged that although a nurse is not an "acceptable medical source," the nurse's orders are "other source" opinions that need to be considered. (*Id.* at 32; citing SSR 06-03p, 2006 WL 2329939, at *2 (Aug. 9, 2006)). The ALJ dismissed the nurse's recommendation regarding leg elevation for the sole reason that the nurse's recommendations were "accommodated by the primarily sedentary nature of" Plaintiff's RFC." (*Id.* at 32). This reason is not supported by substantial evidence.

As an initial matter, sedentary work, as defined by the SSA, does not inherently accommodate or consider an individual's need to elevate his legs during the day. *See, e.g.*, 20 C.F.R. §§ 404.1567(a), 416.967(a); SSR 96-9p, 1996 WL 374185, at *3, *6–9 (July 2, 1996); SSR 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983). More significantly, the VE testified that an individual who could sit for six hours, stand for two hours, and walk for two hours (like Plaintiff) could not work if he also had to elevate his legs for 30 minutes, four times a day. (R. at 26, 80, 82). The VE indicated that if an individual at *any* exertional level had to elevate his legs for 30 minutes even once a day, he could not perform the jobs the VE had previously identified, as an individual

8

who "needs that kind of assistance really would need an accommodation in the workplace." (*Id.* at 85). Thus, the ALJ's assertion that the sedentary aspects of Plaintiff's RFC accommodated the leg-elevation restrictions contained in the nurse's February, March, and October 2014 instructions was erroneous. *See Aurand v. Colvin*, 654 F. App'x 831, 838–39 (7th Cir. 2016) (finding that the ALJ's failure to give a logical explanation for discounting medical opinions left the ALJ's decision unsupported by substantial evidence); *Yeakey v. Berryhill*, No. 1:17-cv-00542-JMS-DML, 2017 WL 5562415, at *5 (S.D. Ind. Nov. 20, 2017) (explaining that a reviewing court "may reverse based on an ALJ's analysis of a physician's opinion when it is 'erroneous' or 'illogical.'"). For these reasons alone, remand is required for the ALJ to re-evaluate the opinion evidence about leg elevation.

Plaintiff additionally argues that the ALJ mischaracterizes Dr. Patel's 2014 report with regards to leg elevation. Dr. Patel's 2014 report states, in relevant part:

> Patient was recommended elevation of the leg and compression stockings for rest of his life to prevent breakdown again and was strongly advised not to let the dependent edema and the venous stasis occur during his employment and during the time when he is up on his leg. At night, patient should be elevating his leg over pillows.

(R. at 603). The ALJ gave Dr. Patel's report "great deference and weight," but noted that while the report indicated a need for Plaintiff to elevate his leg at night, the report did not mention any need for Plaintiff to elevate his legs during the day. (*Id.*).[5] Plaintiff asserts that in strongly advising Plaintiff "not to let the dependent edema

---

[5] The ALJ mistakenly identified Dr. Richards as the author of this report. (R. at 30, 32). Neither party has argued that this mistake affected the ALJ's evaluation.

9

and the venous stasis occur during his employment and during the time when he is up on his leg," (*Id.* at 603), Dr. Patel was not limiting his recommendation regarding leg elevation to nighttime hours. (Dkt. 22 at 6). Defendant does not respond to this argument. In his report, Dr. Patel recommended two ways for Plaintiff to prevent his edema and venous status from occurring: "elevation of the leg and compression stockings for [the] rest of his life." (R. at 603). While Dr. Patel specifically recommended that Plaintiff elevate his leg at night, it is unclear whether Dr. Patel also contemplated that Plaintiff should elevate his legs during the day to prevent the dependent edema and the venous status from occurring. On remand, the ALJ may want to contact Dr. Patel to clarify the doctor's recommendations regarding leg elevation. *See McQuestion v. Astrue*, 629 F. Supp. 2d 887, 904 (E.D. Wis. 2009) (noting that in reconsidering a doctor's opinions on remand, the ALJ may "wish to re-contact the doctor to obtain clarification of the plaintiff's condition during the relevant time").[6]

## B. The ALJ's Subjective Symptom Evaluation

Plaintiff also contends that the ALJ failed to properly assess his subjective symptom allegations. A two-step process governs the evaluation of a claimant's description of his pain and symptoms. First, the ALJ "must consider whether there

---

[6] Defendant made a number of impermissible *post hoc* rationalizations that the Court need not address because they were not used by the ALJ. *Meuser*, 838 F.3d at 911 (citing *SEC v. Chenery Corp.*, 318 U.S. 80, 87-88 (1943)); *Kastner v. Astrue*, 697 F.3d 642, 648 (7th Cir. 2012) ("Under the *Chenery* doctrine, the Commissioner's lawyers cannot defend the agency's decision on grounds that the agency itself did not embrace"); *Scott v. Astrue,* 647 F.3d 734, 739 (7th Cir. 2011) ("We confine our review to the rationale offered by the ALJ"); *Larson v. Astrue*, 615, F.3d 744, 749 (7th Cir. 2010) ("But these are not reasons that appear in the ALJ's opinion, and thus they cannot be used here").

is an underlying medically determinable physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms, such as pain." SSR 16-3p, 2016 WL 1119029, at *2 (Mar. 16, 2016).[7] "Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's symptoms is established, [the ALJ] evaluate[s] the intensity and persistence of those symptoms to determine the extent to which the symptoms limit an individual's ability to perform work-related activities[.]" *Id.*

In evaluating the claimant's subjective symptoms, "an ALJ must consider several factors, including the claimant's daily activities, [his] level of pain or symptoms, aggravating factors, medication, treatment, and limitations, and justify the finding with specific reasons." *Villano*, 556 F.3d at 562 (citations omitted); *see* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 16-3p, at *7. An ALJ may not discredit a claimant's testimony about his symptoms "solely because there is no objective medical evidence supporting it." *Villano*, 556 F.3d at 562. Even if a claimant's symptoms are not supported directly by the medical evidence, the ALJ may not ignore circumstantial evidence (medical or lay) that does support a claimant's symptom allegations. *See Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539–40 (7th Cir. 2003).

Although the Court will uphold an ALJ's subjective symptom evaluation if it "is not patently wrong," the ALJ "still must competently explain an adverse-credibility

---

[7] For all determinations made by an ALJ on or after March 28, 2016, SSR 16-3p supersedes SSR 96-7p and its focus on "credibility." *See* SSR 16-3p, at *1 (clarifying that "subjective symptom evaluation is not an examination of the individual's character"); Notice of Social Security Ruling, 82 Fed. Reg. 49462-03, 2017 WL 4790249, at n.27 (Oct. 25, 2017). Because the ALJ issued his opinion on September 19, 2016 (R. at 35), SSR 16-3p applied and will continue to apply on remand. *See* 82 Fed. Reg. 49462-03 at n.27.

11

finding with specific reasons supported by the record." *Engstrand v. Colvin*, 788 F.3d 655, 660 (7th Cir. 2015) (internal quotations omitted). Simply reciting the factors set forth in the regulations is not enough: "[w]ithout an adequate explanation, neither the applicant nor subsequent reviewers will have a fair sense of how the applicant's testimony is weighed." *Steele*, 290 F.3d at 942. "An erroneous credibility finding requires remand unless the claimant's testimony is incredible on its face or the ALJ explains that the decision did not depend on the credibility finding." *Pierce v. Colvin*, 739 F.3d 1046, 1051 (7th Cir. 2014).

Here, the ALJ found that Plaintiff's symptom allegations were "not entirely consistent with the medical evidence and other evidence in the record" and that "consideration of the factors described in 20 CFR 404.1529(c)(3) and 416.929(c)(3) and Social Security Ruling 16-3p" supported his finding that Plaintiff's allegations could not be accepted. (R. at 27, 31). Specifically, the ALJ found that Plaintiff's allegations were not supported by (1) his activities of daily living; (2) his course of treatment; and (3) the objective medical findings. (*Id.*). Because these reasons are legally insufficient and not supported by substantial evidence, remand is warranted on this issue as well. *See Ghiselli v. Colvin*, 837 F.3d 771, 778–79 (7th Cir. 2016).[8]

---

[8] The Court notes that the ALJ's mere assertion that the appropriate factors support his evaluation does not give a reviewing court "a fair sense of how the applicant's testimony is weighed." *See Steele*, 290 F.3d at 942. Similarly, the "not entirely consistent" phrasing fails to specify which allegations are consistent or inconsistent with the record, and its use by ALJs has been repeatedly criticized by reviewing courts. *See, e.g., Boyd v. Berryhill*, No. 17 C 3686, 2018 WL 3303263, at *3 (N.D. Ill. July 5, 2018); *Dejohnette v. Berryhill*, No. 16 C 11378, 2018 WL 521589, at *5 (N.D. Ill. Jan. 22, 2018). Even so, these insufficiencies are harmless because the ALJ proceeded to give reasons justifying his subjective symptom evaluation. *See Schomas v. Colvin*, 732 F.3d 702, 708 (7th Cir. 2013) ("The use of boilerplate is innocuous when . . . the language is followed by an explanation for rejecting the claimant's testimony.").

First, the ALJ did not explain why Plaintiff's daily activities undermined his allegations. Although an ALJ may consider inconsistencies between the claimant's daily activities and his description of symptoms, these inconsistencies must be explained or be so obvious that no explanation is needed. *Cullinan v. Berryhill*, 878 F.3d 598, 603 (7th Cir. 2017); *see also Zurawski v. Halter*, 245 F.3d 881, 887 (7th Cir. 2001) (finding that the ALJ should have explained the purported inconsistencies between the claimant's activities of daily living, his complaints of pain, and the medical evidence). The ALJ here merely listed certain activities of daily living and then concluded, without elaboration, that Plaintiff's "ability to participate in these activities is inconsistent with [his] alleged symptoms and limiting effects." (R. at 31). The inconsistencies between these activities and Plaintiff's allegations is not obvious. It is unclear, for instance, how Plaintiff's ability to perform such basic tasks as bathing, using the toilet, cooking, doing light household chores, going shopping, and using the computer contradicts or undermines his alleged symptoms. Without more, the Court cannot determine whether the ALJ reached his conclusion "in a rational manner, logically based on [his] specific findings and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011).

The ALJ also did not properly account for the difficulty Plaintiff had in performing many of the listed daily activities. *See Moss v. Astrue*, 555 F.3d 556, 562 (7th Cir. 2009) ("An ALJ cannot disregard a claimant's limitations in performing household activities."). Plaintiff only went shopping once a month, for between 20 minutes and 2 hours. (R. at 246, 280). He could only do light household chores for about 30–40

minutes per day. (*Id.* at 245). And Plaintiff's "cooking" consisted of microwaving frozen meals and preparing breakfast and sandwiches; he could not stand to cook, nor could he prepare meals that took a long time. (*Id.* at 245, 279). The ALJ improperly disregarded these limitations (and any other limitations) in assessing Plaintiff's ability to perform daily activities.

Second, the ALJ erred in drawing a negative inference based on Plaintiff's perceived failure to comply with treatment or take medication. "Although a history of sporadic treatment or the failure to follow a treatment plan can undermine a claimant's credibility, an ALJ must first explore the claimant's reasons for the lack of medical care before drawing a negative inference" by, for example, questioning the claimant "to determine whether there are good reasons [he] does not seek medical treatment or does not pursue treatment in a consistent manner." *Shauger v. Astrue*, 675 F.3d 690, 696 (7th Cir. 2012) (internal quotations omitted); *see* SSR 16-3p, at *8–9. "Good reasons" may include "an inability to afford treatment, ineffectiveness of further treatment, or intolerable side effects." *Shauger*, 675 F.3d at 696; SSR 16-3p, at *9. If the ALJ does not believe a claimant's proffered explanations for his lack of treatment or finds those explanations insufficient, he is required to explain why. *Jones v. Colvin*, No. 15 C 11310, 2016 WL 4798956, at *5 (N.D. Ill. Sept. 14, 2016).

Here, the ALJ discounted Plaintiff's subjective statements in part because Plaintiff has "not always been compliant with his prescribed treatment course and has at times gone without medications or follow-up." (R. at 31). Nowhere did the ALJ discuss whether Plaintiff's non-compliance with treatment and failure to take

14

medications was caused by a "good reason," such as an inability to afford treatment. *See Shauger*, 675 F.3d at 696. And there are indications in the record that Plaintiff may not have been able to afford treatment in some instances. For example, Plaintiff testified and reported that he had no income in 2014. (R. at 63, 246). What is more, the insurance that he had at this time, a form of Medicaid, would not pay for compression stockings. (*Id.* at 73–74, 604).

The Commissioner's contention that "the ALJ *did* consider and inquire about [Plaintiff's] reasons for noncompliance" is unavailing. (Def.'s Mem., Dkt. 21 at 10 (emphasis in original)). In setting forth a chronological recitation of the medical evidence, the ALJ noted an instance where Plaintiff failed to take his insulin because he was out of town and an instance where Plaintiff obtained compression stockings despite his insurance issues. (R. at 29–30). But this evidentiary recitation does not reflect a consideration of the reasons underlying Plaintiff's non-compliance with treatment. *See Perry v. Colvin*, 945 F. Supp. 2d 949, 965 (N.D. Ill. 2013) ("[S]ummarizing the evidence is not the equivalent of providing an analysis of the evidence."). Nor did the ALJ ask Plaintiff about his medical insurance at the hearing, as the Commissioner claims; instead, the question was asked by Plaintiff's counsel. (R. at 68–69, 73–74). Even if the ALJ had asked Plaintiff about his insurance, what matters is the analysis set forth in the body of the ALJ's decision. *Jelinek*, 662 F.3d at 811 ("We limit our review to the reasons articulated by the ALJ in the written decision."); *see Jones*, 2016 WL 4798956, at *5 ("The ALJ must then, while evaluating symptom severity, explain how he considered the individual's reasons for not seeking

15

treatment, doing so in a manner sufficient to allow the Court to trace the path of his reasoning.") (internal quotations and alteration omitted). And the ALJ's decision here does not show that he analyzed or considered the reasons for Plaintiff's treatment non-compliance before using it to discount his symptom allegations.

The only other reason the ALJ gave for finding that Plaintiff's allegations were "not entirely consistent" with the evidence was a lack of support by the objective medical evidence. (R. at 27, 31). But this finding cannot constitute the sole remaining justification for the ALJ's adverse subjective symptom evaluation. *See Hill v. Colvin*, 807 F.3d 862, 869 (7th Cir. 2015) (explaining that a claimant's "testimony cannot be disregarded simply because it is not corroborated by objective medical evidence"); *Thomas v. Colvin*, 745 F.3d 802, 806–07 (7th Cir. 2014) (explaining that "[b]ecause all of the other reasons given by the ALJ" for her subjective symptom evaluation "were illogical or otherwise flawed," the lack of supporting medical evidence alone could not support the ALJ's finding that the claimant was not credible). Thus, the ALJ's evaluation of Plaintiff's subjective symptom allegations requires remand.

On remand, the ALJ shall re-evaluate the opinion evidence regarding leg elevation using the regulatory factors set forth in 20 C.F.R. §§ 404.1527(c) and 416.927(c). The ALJ shall also re-evaluate Plaintiff's subjective symptom allegations in accordance with SSR 16-3p and with due regard for the full range of medical evidence. *See Zurawski*, 245 F.3d at 888. The ALJ shall then reevaluate Plaintiff's RFC, considering all of the evidence of record, including Plaintiff's testimony, and shall explain the basis of his findings in accordance with applicable regulations and

rulings. Finally, with the assistance of a VE, the ALJ shall determine whether there are jobs that exist in significant numbers that Plaintiff could have performed.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's motion for summary judgment [14] is **GRANTED**, and the Commissioner's motion for summary judgment [20] is **DENIED**. Pursuant to sentence four of 42 U.S.C. § 405(g), the ALJ's decision is reversed, and the case is remanded to the Commissioner for further proceedings consistent with this opinion.

E N T E R:

Dated: February 21, 2019

*Mary M Rowland*

MARY M. ROWLAND
United States Magistrate Judge